```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


BRETT KINGERY,

            Plaintiff,

    vs.                                  Civil Action 2:14-cv-996
                                         Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
```

### OPINION AND ORDER

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 15, and *Defendant's Opposition to Plaintiff's Statement of Errors* ("*Commissioner's Response*"), Doc. No. 20.

Plaintiff Brett Kingery protectively filed his applications for benefits on March 15, 2011, alleging that he has been disabled since March 30, 2011.  *PAGEID* 46, 200-13.  The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on February 6, 2013, at which

plaintiff, represented by counsel, appeared and testified, as did Carl W. Hartung, who testified as a vocational expert. *PAGEID* 46, 63. In a decision dated March 1, 2013, the administrative law judge concluded that plaintiff was not disabled from March 30, 2011, through the date of the administrative decision. *PAGEID* 46-58. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 27, 2014. *PAGEID* 30-32.

Plaintiff was 44 years of age on the date of the administrative decision. *See PAGEID* 58, 200. Plaintiff is insured for disability insurance purposes through September 30, 2015. *PAGEID* 48. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a store laborer, fast food service manager, and tire servicer. *PAGEID* 56. He has not engaged in substantial gainful activity since March 30, 2011, the alleged date of onset of disability. *PAGEID* 48.

## II.  Medical Evidence[1]

Plaintiff was seen at the Adena Bone and Joint Center on November 30, 2009, for pain in his right great toe and right hand following a BMX bicycle wreck, and intermittent left elbow pain. *PAGEID* 283. Plaintiff's gait was nonantalgic, there was full flexion and extension in his elbows, there was 5/5 strength in his biceps and triceps, and his supination and pronation strength was 5/5. *PAGEID* 283-84. There was discomfort with supination testing of the left elbow and

---

[1] The Court's discussion of the evidence of record is limited to the issues presented in plaintiff's *Statement of Errors*. Plaintiff "is not challenging the ALJ's determination regarding his mental residual functional capacity." *Statement of Errors*, p. 5.

2

tenderness to palpation of the bicipital tendon. *Id*. Plaintiff underwent physical therapy for two weeks for his elbow, but without benefit, *PAGEID* 287, and he continued to report pain through February 2010. *PAGEID* 285-91. A January 5, 2010 MRI of the left elbow revealed a mild degree of olecranon bursitis and mild degenerative changes with small nonspecific joint effusion and at least one intra-articular loose body. *PAGEID* 279-80. Hypermobility in the hand and full motion of the elbow with no crepitus or catching wee noted on February 1, 2010. *PAGEID* 289.

    Plaintiff underwent a left elbow arthrotomy with removal of loose bodies on February 18, 2010. *PAGEID* 281-82. Plaintiff continued to report some pain on March 24, 2010, but there was "very good range of motion of the elbow from 15 degrees to full flexion and full pronation and supination." *PAGEID* 293. There was no clicking, no locking, and no sign of instability, and it was noted that plaintiff had "[n]o restrictions." *PAGEID* 293. Plaintiff had full range of motion of the elbow on April 19, 2010, but reported increased pain. PAGEID 294. On May 12, 2010, plaintiff had full range of motion, no locking, no wrist pain, no tenderness in the snuffbox, and negative Finkelstein's sign. *PAGEID* 295. Plaintiff reported "occasional aches in the front of the elbow" that extend into his armpit and down to the radial side of the wrist. *Id*. A CT scan "show[ed] 1 more loose body . . . at the anterior aspect in the carotid fossa." *Id*. Plaintiff "was told just to use some Aleve." *Id*. On July 12, 2010, plaintiff reported that his elbow had been locking up once per week; he complained of pain

that he rated at two to three on a 10-point scale.  *PAGEID* 296.  A repeat CAT scan revealed 2 loose bodies, and it was noted that "[t]hey cause the elbow to lock up about once a week."  *Id*.  The doctor recommended that they "reexplore and try to get the remaining loose bodies out," but plaintiff had "some activities planned for the summer."  *Id*.

Plaintiff reported to the emergency room on February 4, 2011, after falling on ice.  *PAGEID* 323.  Plaintiff had cracked three ribs on the left side, and a CT scan revealed a 6 mm pneumothorax on the left.  *Id*.  Plaintiff reported that he was "employed installing windshields which entails quite a bit of lifting and stretching."  *Id*.  It was recommended that plaintiff take 10 days off work to recover and that he refrain from activities that would result in a strike or blow to the chest.  *Id*.

In June 2011, plaintiff reported low back pain radiating down his left leg.  *PAGEID* 328.  A June 15, 2011 x-ray of the lumbar spine revealed facet arthropathy and minimal degenerative disc disease.  *PAGEID* 324.  A June 23, 2011 MRI of the lumbar spine revealed congenital narrowing of the lumbar spinal canal with moderate central spinal stenosis at L4-L5 and mild central spinal canal narrowing at L3-L4, mild right foraminal narrowing at L3-L4, and moderate right and mild left foraminal narrowing at L4-L5.  *PAGEID* 325-26.  Plaintiff was diagnosed with low back pain, chronic type, without clear signs of nerve root compromise.  *PAGEID* 327.

Plaintiff was consultatively evaluated by Phillip Swedberg, M.D., on July 22, 2011. *PAGEID* 331-38. Plaintiff reported that his chief complaint was low back pain since childhood. *PAGEID* 335. On examination, plaintiff had a normal gait; normal flexion, extension, and rotation of the spine; normal flexion and abduction of the extended arms; "well-preserved" muscle and grasp strength in the upper extremities; normal straight leg raising; and mild thoracic scoliosis. *PAGEID* 336-37. Plaintiff could forward bend and squat without difficulty, and he was comfortable in the sitting and supine positions. *Id*. Dr. Swedberg opined that plaintiff "appears capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." *PAGEID* 337. Dr. Swedberg further opined that plaintiff had no difficulty reaching, grasping, and handling objects, no visual and/or communication limitations, and no environmental limitations. *Id*.

Plaintiff has received treatment by the Adena Chillicothe Family Physicians from at least October 2010 for, *inter alia*, anxiety, depression, shoulder pain, back pain, and leg pain. *PAGEID* 308-09, 373-77. Jay Thakur, M.D., completed a medical source statement on January 22, 2013, *PAGEID* 405-06, and opined that, as a result of elbow surgery in 2010 and degenerative joint disease, plaintiff was limited to lifting lift 10 pounds occasionally and less than one pound frequently. *PAGEID* 405. Based on the June 23, 2011 MRI of plaintiff's lumbar spine, plaintiff was limited to standing/walking

5

for two hours in an eight-hour workday, for 15 to 20 minutes without interruption, and to sitting for three hours, for 15 to 20 minutes without interruption. *Id*. Because of his spinal stenosis and disc protrusions, plaintiff could only occasionally balance and stoop and could rarely climb, crouch, kneel, and crawl. *Id*. As a result of his elbow surgery, loose bones, limited function, and pain, plaintiff could only occasionally push/pull and perform fine manipulation with his left arm, could only rarely reach and perform gross manipulation with his left arm, and should avoid moving machinery. *PAGEID* 406. Dr. Thakur noted that plaintiff had been prescribed a brace and a TENS unit, had severe left leg and left arm pain that interfered with concentration and caused absenteeism and to be off task, needed to elevate his legs at will to 45 degrees, and would require 10 to 12 unscheduled rest periods during an eight-hour workday in addition to a standard half-hour lunch and two fifteen minute breaks. *Id*.

Elaine M. Lewis, M.D., reviewed the record and completed a residual functional capacity assessment on August 17, 2011. *PAGEID* 104-05. According to Dr. Lewis, plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk for about six hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday. *Id*.

Leanne M. Bertani, M.D., reviewed the record and completed a residual functional capacity assessment on January 16, 2012. *PAGEID* 127-28. Dr. Bertani opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk

6

about six hours in an eight-hour workday, and could sit about six hours in an eight-hour workday.  *PAGEID* 127.  Dr. Bertani further opined that plaintiff could frequently stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.  *Id*.

**III.  Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the lumbar spine, degenerative joint disease of the left elbow, scoliosis, and depressive disorder.  *PAGEID* 49.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the work has to be limited to simple, routine, repetitive tasks that do not require assembly line type production rate or fast paced work, or work with large groups, and with only occasional interaction with co-workers, supervisors, and the general public.

*PAGEID* 50-52.  Although this RFC precludes the performance of plaintiff's past relevant work as a store laborer, fast food service manager, and tire servicer, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as vehicle cleaner, hand packager, and housekeeper.  *PAGEID* 56-57.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from March 30, 2011, through the date of the administrative decision.  *PAGEID* 58.

**IV.  Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first argues that the administrative law judge erred in evaluating Dr. Thakur's opinion. *Statement of Errors*, pp. 9-13.  Plaintiff specifically argues that the

8

administrative law judge improperly failed to grant Dr. Thakur's opinion controlling weight, failed to evaluate that opinion by reference to the appropriate factors, and failed to provide "good reasons" for discounting the opinion.  *Id*.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature, and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR

9

96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Thakur completed a medical source statement on January 22, 2013, *PAGEID* 405-06, and opined that, as a result of elbow surgery in 2010 and degenerative joint disease, plaintiff was limited to lifting lift 10 pounds occasionally and less than one pound frequently. *PAGEID* 405. Based on the June 23, 2011 MRI of plaintiff's lumbar spine, plaintiff was limited to standing/walking for two hours in an eight-hour workday, for 15 to 20 minutes without interruption, and to sitting for three hours, for 15 to 20 minutes without interruption. *Id*. Because of his spinal stenosis and disc protrusions, plaintiff could only occasionally balance and stoop and could rarely climb, crouch, kneel, and crawl. *Id*. As a result of his elbow surgery, loose bones, limited function, and pain, plaintiff could only occasionally push/pull and perform fine manipulation with his left arm, could only rarely reach and perform gross manipulation with his left arm, and should avoid moving machinery. *PAGEID* 406. Dr. Thakur noted that plaintiff had been prescribed a brace and a TENS unit, had severe left leg and left arm pain that interfered with concentration and caused absenteeism and to be off task, needed to elevate his legs

10

at will to 45 degrees, and would require 10 to 12 unscheduled rest periods during an eight-hour workday in addition to a standard half-hour lunch and two fifteen minute breaks. *Id*.

The administrative law judge recognized Dr. Thakur as a treating physician and evaluated his opinions as follows:

> Jay Thakur, M.D., the claimant's treating physician, opined that the claimant would be limited to less than sedentary work with standing/walking a total of two hours and sitting a total of three hours in an eight hour workday. The claimant would also have "rare" postural activities, would have to elevate his legs at will, and would have to have additional rest periods 10 to 12 times per day (Exhibit 18F). I cannot give any weight to his opinion, let alone controlling weight, as it is not supported by the evidence of record. There is no indication, either objectively or subjectively, that the claimant needed to elevate his legs. Second, Dr. Thakur appears to have based his limitations in large part on the claimant's subjective complaints of pain as well as restriction of motion and limited function of his left elbow. However, the evidence does not show any limited motion of the elbow, and as will be described in more detail below, the claimant's assertions are not entirely credible.

*PAGEID* 53 (footnoted defining sedentary work omitted).

The administrative law judge did not violate the treating physician rule in evaluating Dr. Thakur's opinion. The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Thakur's opinion and the reasons for assigning that weight. The administrative law judge categorized Dr. Thakur as a treating physician, but discounted his opinion because it was "not supported by the evidence of record." *Id*. The administrative law judge explained that there was no indication that plaintiff needed to elevate his legs and that Dr. Thakur appeared to base his opinion on plaintiff's subjective complaints of pain, which were found not to be entirely

11

credible. Noting that Dr. Thakur based his limitations on restricted motion and limited function of the left elbow, the administrative law judge also found that "the evidence does not show any limited motion of the elbow." *Id*. These findings enjoy substantial support in the record, and plaintiff has not challenged the administrative law judge's credibility determination. Under the circumstances, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

In a related argument, plaintiff argues that the administrative law judge erred in relying on the testimony of the vocational expert. *Statement of Errors*, pp. 13-17. Plaintiff specifically argues that the hypothetical posed to the vocational expert was incomplete because it did not incorporate the limitations opined by Dr. Thakur. *Id*.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the [administrative law judge] has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir.

12

2011) (citing *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The administrative law judge posed to the vocational expert a complete hypothetical question that incorporated all of plaintiff's impairments as found by the administrative law judge.  The vocational expert responded that such an individual could not perform plaintiff's past relevant work as a store laborer, fast food service manager, and tire servicer, but could perform a significant number of jobs in the national economy, including such representative jobs as vehicle cleaner, hand packager, and housekeeper.  PAGEID 84-88.  The administrative law judge relied on this portion of the vocational expert's testimony in determining that plaintiff can perform a significant number of jobs that exist in the national economy, even though he could not perform his past relevant work.  PAGEID 56-57.

It is plaintiff's position that the administrative law judge erred in not accepting the vocational expert's testimony in response to hypotheticals containing alternative and additional limitations.  *Statement of Errors*, pp. 13-17.  It is true that the administrative law judge and plaintiff's counsel posed different hypotheticals to the vocational expert, which contained different functional limitations.  *See PAGEID* 86-94.  Nevertheless, the administrative law judge relied only on the hypothetical posed to the vocational expert that included all of the limitations contained in the RFC eventually found by the administrative law judge.  The administrative law judge therefore did not err in relying on the vocational expert's testimony in this

13

regard. *See Parks*, 413 F. App'x at 865 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. . . . Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible.") (internal citations and quotations omitted); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (where a hypothetical accurately described the plaintiff in all relevant respects, the vocational expert's response to the hypothetical question constitutes substantial evidence).

Plaintiff next argues that the administrative law judge erred in adopting the opinions of the state agency physicians because the "reviewing physicians did not identify any upper extremity limitations" and their opinions "appear to have been proffered without taking Plaintiff's upper extremity impairment and limitations into account." *Statement of Errors*, p. 14. According to plaintiff, the reviewing physicians and the RFC determination did not include any upper extremity restrictions, which "is in conflict with the evidence of record." *Id*. In support of his argument, plaintiff cites to his 2010 elbow surgery, a CT scan showing "one more loose body at the anterior aspect in the carotid fossa," and Dr. Thakur's opinion. *Id*. Plaintiff's arguments are not well taken.

As discussed *supra*, the administrative law judge provided good reasons for discounting the opinion of Dr. Thakur. Plaintiff argues

14

that additional limitations should have been included in the RFC determination and that the administrative law judge should have discounted the reviewing physicians' opinion because plaintiff had elbow surgery in 2010 and there is still "one more loose body" in his elbow. *Statement of Errors*, p. 14.  However, the administrative law judge expressly considered this evidence, *see PAGEID* 49-50, and found that "the evidence does not show any limited motion of the elbow" and that plaintiff did not have "lingering significant difficulties with his elbow." *PAGEID* 53-54.  These findings enjoy substantial supported in the record.  Moreover, as the Commissioner argues, *Commissioner's Response*, p. 9, the administrative law judge's RFC determination limits plaintiff to a reduced range of light work, *PAGEID* 52, which includes upper extremity limitations for lifting and carrying.  *See* 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is **AFFIRMED**.

This action is hereby **DISMISSED**.  The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


April 29, 2015                                    *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                          United States Magistrate Judge